**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CR. No. 06-07ML** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **CHUONG NGUYEN** | ) | |

# UNITED STATES' SENTENCING MEMORANDUM

## I. Introduction

On June 20, 2006, Defendant Chuong Nguyen pleaded guilty to Count XIII of a fourteen count Indictment, charging him with failing to truthfully account for and pay over federal income taxes for the second tax quarter of 2002. Sentencing is scheduled for October 13, 2006. The Presentence Report (PSR) calculates Defendant's sentencing guideline range at 24 to 30.[1] Defendant has filed a Sentencing Memorandum in which he asks that the Court depart downward and sentence him to 6 months imprisonment. In support of his Memorandum, Defendant has provided two reports of psychological examination, one from Dr. Marilyn Price, and the second from Debra Lastoff. The United States files the instant sentencing memorandum in opposition to Defendant's request for a downward departure.

## II. Sentencing Factors Pursuant to 18 U.S.C. § 3553(a)

In determining the appropriate sentence to impose, the Court must consider the Guideline sentencing range. See e.g. United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006). In determining whether to fashion a sentence outside the Guideline range, the Court is guided by the

[1] In the Prosecution Version, the United States maintains that Defendant's failure to pay federal withholding taxes for all the years charged in the Indictment, the second tax quarter of 1999 through the third tax quarter of 2002, should be considered as relevant conduct in calculating the appropriate Guideline range.

factors outlined in 18 U.S.C. § 3553(a) in calculating whether a sentence outside the range is reasonable.

**(1) Defendant's History and Characteristics and Nature of the Offense**

The Defendant's history and characteristics are adequately detailed in the PSR prepared by the probation department. As a supplement to the PSR, Defendant has submitted a report of Marilyn Price, MD, which also details Defendant's early life experiences in Vietnam. Dr. Price opines that although Defendant reported that he has "nightmares and flashbacks" concerning his experiences in Vietnam, he does not evidence any symptoms associated with psychosis. Based on Defendant's reports of nightmares and flashbacks, Dr. Price concludes that Defendant suffers from Post-Traumatic Stress Disorder (PTSD) and depression, which, nevertheless, did not impact whether the Defendant understood the wrongfulness of his actions. Price Report at 8-9. Dr. Price also concludes that the Defendant suffers from a gambling addiction which, combined with his PTSD and depression, contributed to his poor decision-making ability. Dr. Price finds that Defendant's gambling addiction caused him, over time, to gamble more, "hoping for the big win so that he could repay his debts. In doing so he failed to pay his taxes and as a result faces his current charges." Price Report at 8. The report of Debra Lastoff states that Defendant's early life experiences in Vietnam are similar to the life experiences of many individuals who grew up in Vietnam during the war and that gambling offered the Defendant a means of escaping his trauma.

The United States does not dispute Defendant's accounts of his early life experiences in Vietnam. However, absent some greater indication that Defendant's mental status "contributed substantially to the commission of the instant offense" Dr. Price's findings do not indicate that a sentence below the Guideline range is warranted. See United States v. Jones, 2006 WL 2673296,

* 2 (1st Cir. Sept. 19, 2006) (slip op.) (attached as exhibit 1). For example, Dr. Price does not suggest that Defendant suffers from reduced mental capacity or that he committed the instant offense in order to finance his gambling. Ms. Lastoff's report provides no comment on the impact of Defendant's gambling addiction on his criminal behavior.

In addition, records of Defendant's gambling indicate that despite gambling large amounts of money for some of the years he ran his business, he still kept large amounts of cash earnings from his business. For example, records obtained from Foxwoods casino indicate that 2000, Defendant paid out at least $25,910 in table games. In 2000, the Defendant netted approximately $100,600.[2] In 2001, the Defendant netted approximately $105,084 from his business. Foxwoods records for that year show him paying out approximately $33,180 in table games.[3] Thus, it does not appear that Defendant gambled away all of the income he earned and thus his gambling does not account in total for his failure to pay income taxes on behalf of his

---

[2] Foxwoods casino records show that the Defendant bought in the following amounts in cash for the specified years:

| | |
|---|---|
| 1993 | $48,000 |
| 1994 | $0 |
| 1995 | $10,900 |
| 1996 | $6,600 |
| 1997 | $0 |
| 1998 | $0 |
| 1999 | $52,450 |
| 2000 | $25,910 |
| 2001 | $33,180 |
| 2002 | $19,600 |
| 2003 | $11,100 |
| 2004 | $0 |
| 2005 | $0 |

[3] The IRS sought Defendant's gambling records from Mohegan Sun casino. Agents from the IRS were informed that the casino had no record of the Defendant.

employees.

Moreover, Dr. Price's report states that Defendant informed her that he began gambling before he started his business in 1996 but that he was unable to gamble a lot. Records obtained from Foxwoods casino show, however, that this was not the case and that prior to starting his business in 1996, Defendant gamble significant amounts of cash. For example, in 1993 Defendant gambled approximately $48,000 and in 1995 he gambled approximately $10,900.[4] Currently, Defendant reports that he is not gambling because he does not have sufficient income to pay his bills. Indeed, Foxwoods records show no cash buy-ins for the Defendant in 2004 or 2005. Thus, despite Dr. Price's diagnosis of pathological gambling, there is no indication in her report that Defendant has been unsuccessful in cutting back on his gambling based on his limited income.

Defendant also urges that in fashioning a sentence below the Guideline range, the Court should take into account the fact that he was running his business without any formal business training. The Defendant's lack of business training does not excuse his failure to withhold and pay over federal income taxes on behalf of his employees. Indeed, in pleading guilty to Count XIII in the Indictment, the Defendant has acknowledged that he knew he was required to withhold and pay over federal income taxes yet failed to do so. He could hardly claim otherwise, given the number of people he informed as part of his business strategy that he was responsible for paying his employees' income taxes. Moreover, the type of business Defendant ran did not require a great level of sophistication - he took money in from his client companies

[4] The United States will be prepared to present evidence relating to Defendant's gambling at the sentencing hearing on October 13, 2006.

and paid money out to his employees, keeping the difference for himself. Despite Defendant's claims to the contrary, he was sufficiently sophisticated in his business practices to pay his employees in cash for the six years he ran his business in order to avoid detection by the authorities for an extended period of time.

In sum, there is nothing in Defendant's history or character which warrants a sentence below the low point in the Guideline range, or 24 months. To the contrary, Defendant ran a temporary employment business for six years, from 1998 to 2002 took in approximately $1,779,000 in cash from his client companies and paid none of that money to the United States. He admits that prior to starting his own business he had worked for temporary employment agencies, at least one of which had issued him a W-2 form, and thus he unequivocally knew his obligations from the moment he started his company. Ex. 2. His conduct not only left the United States bereft of withholdings to which the IRS was entitled, but placed in jeopardy his client companies and employees who relied on his statements that he was responsible for paying employee taxes. Thus, the nature and circumstances of the offense warrant a sentence within Guideline range.

**(2) The Need for the Sentence Imposed**

A sentence within the Guideline range of 24-30 months incarceration is necessary in order to reflect the seriousness of the offense, promote respect for the law and to provide just punishment for the offense. As stated above, Defendant's conduct implicated not just himself, but those who relied on his representations that he would be responsible for paying the employment taxes of his employees. In addition, the type of business which Defendant ran, a temporary employment agency, is used with increasing frequency by business owners as a way to

control employee costs. Thus, a sentence within the Guideline range is appropriate in order to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter other business owners responsible for paying withholding taxes from failing to comply with federal withholding requirements.

A sentence within the Guideline range is also called for in order to provide the Defendant with the psychiatric care he needs in the most effective manner. Dr. Price's report notes that although Defendant has suffered from PTSD, depression and gambling addiction for many years, he has never undergone any counseling or psychiatric treatment for those conditions. Incarceration for an extended period of time will ensure that Defendant obtain medical services related to his condition for a sufficient period of time, in a consistent and thorough manner, thus increasing the likelihood of successfully treating his conditions in order to avoid recidivism in the future.

## III. Conclusion

Based on the foregoing, the United States respectfully requests that at the time of sentencing the Court impose a sentence of incarceration within the Guideline range of 24 to 30 months.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Dated: October 12, 2006 /S/DULCE DONOVAN

DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax

**CERTIFICATE OF E-FILING**

I hereby certify that on this 12th day of October, 2006, I caused the United States Motion Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Edward C. Roy, Esq.
Federal Public Defender
10 Weybosset Street- Suite 300
Providence, Rhode Island 02903

/S/DULCE DONOVAN